IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEW YORK LIFE INSURANCE
COMPANY,

        Plaintiff,

v.                                            Civ. No. 17-621 KG/KK

ROGER SAUL, ROSEANNE SILVA,
and ESTATE OF JAMES SILVA, deceased,

        Defendants.

ORDER

        THIS MATTER is before the Court on Plaintiff's *Motion to Bifurcate and Stay Discovery Regarding Extra-Contractual Claims*, filed August 25, 2017. (Doc. 36). Defendant Roger Saul filed a *Response* opposing the *Motion* on September 6, 2017. (Doc. 39). And Plaintiff filed its Reply on September 20, 2017. (Doc. 43). The Court notes that the Honorable Kirtan Khalsa, as referral judge, has granted the *Motion* insofar as it seeks a stay of discovery. (Doc. 56). As to the remainder of the *Motion*, the Court has reviewed the parties' submissions, the record, and the relevant law and is otherwise fully advised. For the reasons that follow, the *Motion* is well taken and shall be granted.

**Background**

        This case commenced with Plaintiff's *Complaint for Declaratory Relief* . (Doc. 1). By its declaratory judgment action, Plaintiff seeks a declaration that a life insurance policy that it issued to James Silva (Decedent) prior to his death was effectively rescinded and, therefore, no claim may be brought and no proceeds are payable under the policy. (Doc. 1). Defendant

Roseanne Silva was Decedent's wife, and was the named beneficiary of the life insurance policy. (Doc. 1 at 2). Defendant Roger Saul is Ms. Silva's landlord. (Id).

In sum, the factual allegations are that James Silva (Decedent) applied for, and purchased, a life insurance policy from Plaintiff in 2015. (Doc. 1 at 3). The policy was contestable during the first two years of coverage. (Id). In applying for the policy, Decedent represented that in the two years preceding the application, he had not been "admitted to or confined in a hospital[.]" (Doc. 1 at 4). Decedent died within the first year of coverage. (Doc. 1 at 3). Because Decedent's death occurred within the "contestability period," Plaintiff investigated his medical history. (Doc. 1 at 4). The investigation revealed that Decedent had been hospitalized twice within two years preceding his application for life insurance. (Id). This discovery led Plaintiff to rescind the policy on the ground that Decedent "had made a materially false statement in his application" (Doc. 1 at 4-5).

In its correspondence with Ms. Silva regarding its decision to rescind the policy, Plaintiff indicated that it would issue a refund check for the sum that had been paid for policy premiums plus interest, which check, if cashed, deposited, or endorsed, would constitute Ms. Silva's "agreement to recession of the Contract." (Doc. 1 at 5). Ms. Silva cashed, deposited, or endorsed the check. (Id). Later, in a "now-dismissed related matter" the Bernalillo County Metropolitan Court, Ms. Silva indicated that she did not agree that the policy had been rescinded, and she indicated that she might file a claim against Plaintiff related to the policy. (Doc. 1 at 5). Additionally, Mr. Saul, claiming that Ms. Silva assigned a percentage of the policy proceeds to him after Decedent died, "filed claims" in Bernalillo County Metropolitan Court seeking payment of ten percent of the proceeds of the policy; these claims were dismissed without prejudice. (Doc. 1 at 3, 5). Based on the foregoing, on Mr. Saul's stated intention to assert

claims related to and arising from the life insurance policy, Plaintiff filed its declaratory judgment action.  (Doc. 1 at 6).

Mr. Saul's Answer to Plaintiff's Complaint included Counterclaims for (1) breach of contract claim based on Plaintiff's "[f]ailure to pay $100,000 death benefit proceeds" (as to which Mr. Saul claimed in his Answer to have a fifty-percent interest) and (2) a generalized claim of "bad faith" for Unfair Claims Practices as defined and prohibited by NMSA 1978, Section 59A-16-20, arising out of the manner in which Defendant handled Ms. Silva's claim for benefits under the life insurance policy.  (Doc. 6 at 6-8).

In the *Motion* presently before the Court, Plaintiff seeks to bifurcate and stay discovery as to, Mr. Saul's bad-faith counterclaims pending resolution of its declaratory judgment action. (Doc. 36 at 1).  Plaintiff argues that the bad-faith counterclaims, which are founded on the existence of a valid life insurance policy, will be moot if the Court grants the relief requested in the Complaint.  (Doc. 36 at 1). Therefore, Plaintiff argues, bifurcating and staying discovery as to these counterclaims would serve the interest of judicial economy and efficiency, would save Plaintiff the costs and time associated with producing potentially unnecessary discovery, and would eliminate the potential prejudice to Plaintiff that could arise from the resolution of its declaratory judgment action and Mr. Saul's bad-faith counterclaims in a single trial.  (Doc. 36 at 3-4).

Mr. Saul's Response to this *Motion* indicates his objection, in general terms, to bifurcation, claiming that it is "unnecessary, portends excessive litigation, is a hardship on impecunious Defendants, and may . . . deny[] vulnerable Defendants of due process[.]"  (Doc. 39 at 1)  Otherwise, in substance, Mr. Saul's Response pertains to the merits of Plaintiff's Complaint for declaratory judgment and to matters that are not presently before the Court

(including the now-passed deadline to amend pleadings and Mr. Saul's now-denied motion for sanctions (*See* Doc. 33; Doc. 52).).

**Discussion**

### The Law Governing Bifurcation

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims . . . [or] counterclaims[.]" Fed. R. Civ. P. 42(b). Rule 42(b) vests the Court with broad discretion in deciding whether to order bifurcation. *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985). The Court appropriately exercises this discretion when it orders bifurcation of issues that are "clearly separable" in order to promote the interests identified in Rule 42(b). *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003). The Court's decision "must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party[.]" *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996).

### Mr. Saul's Bad-Faith Counterclaims are Clearly Separable From Plaintiff's Declaratory Judgment Action

Where a party's ability to pursue a claim is contingent upon the resolution in its favor of a separate claim, the respective claims are clearly separable. *See Mandeville v. Quinstar Corp.*, 109 Fed.Appx. 191, 194 (10th Cir. 2004) (holding that issue of whether to pierce corporate veil would become relevant only if plaintiff was successful in one of his underlying claims, thus issues were "logically separable" and properly bifurcated). In the present case, Mr. Saul's counterclaims—centered upon a theory of bad faith failure to investigate and pay Ms. Silva's insurance claim—depend upon the existence of a valid life insurance policy. *See Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 868 P.2d 1307, 1313 (N.M. Ct. App. 1994) (stating "concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual

duty to pay under the policy).; *see also Sanchez v. Safeco Ins. Co. of Am.*, No. 14-926 MV/GBW, 2015 WL 12832335, at *1 (D.N.M. Sept. 11, 2015)("[B]ifurcation of discovery is often appropriate where the existence of coverage . . . is at issue[.]"); *Banclnsure, Inc. v. First Bank, Inc.*, No. 3:10-CV-580, 2011 WL 781191, at * 3 (W.D. Ky. Mar. 1, 2011) (stating that it is logical to delay discovery on bad faith issues pending resolution of coverage issues). Were the fact-finder to conclude that Plaintiff, having rescinded the life insurance policy, had no contractual duty to investigate or ultimately pay Ms. Silva's claim, Mr. Saul's bad-faith counterclaim would be moot. *See e.g., Charter Servs., Inc.*, 868 P.2d at 1313 (holding that since the defendant "was not contractually obligated to pay" an insurance claim, the plaintiff could not "prevail on its claim that [the d]efendant acted in bad faith by denying [the]claim without adequate investigation"). Accordingly, under the circumstances of this case, the issues raised in Plaintiff's declaratory judgment action are clearly separable from Mr. Saul's bad-faith counterclaims.

### Bifurcation Advances the Interests of Judicial Efficiency, Judicial Economy, and the Avoidance of Potential Prejudice to Plaintiff

Plaintiff argues that resolving the contract question raised by its Complaint "is straight forward and requires almost no discovery." (Doc. 36 at 5). In that regard, Plaintiff contemplates that discovery will entail a deposition of Ms. Silva regarding her actions in regard to the rescission and "possibly some discovery into" Plaintiff's practices regarding life insurance applicants who have been recently hospitalized. (Id). On the other hand, Plaintiff argues, Mr. Saul's counterclaims will likely require each party to retain experts qualified to testify in regard to the issue of bad faith, and will certainly require discovery into the scope of Plaintiff's investigation into Ms. Silva's claim for benefits under the policy. (Doc. 36 at 5). Plaintiff argues further that, since Mr. Sauls' counterclaims would be rendered moot by a ruling in

Plaintiff's favor on its declaratory judgment action, any resources expended on discovery related to Mr. Saul's counterclaims will have been wasted in the event that Plaintiff is successful in its action. (Doc. 36 at 5-6). Moreover, Plaintiff argues, that in the event the counterclaims are rendered moot by a judgment in its favor in the declaratory judgment action, the need for discovery, briefing, and, resolution of the legal issue of whether Mr. Saul has standing to assert these counterclaims, would be eliminated. (Doc. 36 at 6). Plaintiff argues, and the Court agrees, that these considerations constitute good ground for bifurcating and staying discovery as to Mr. Saul's counterclaims. *See Allstate Ins. Co. v. Breeden*, 410 F. App'x 6, 9 (9th Cir. 2010) (holding that the district court "properly served the goals of Rule 42(b)" by ordering bifurcation of issue whether insurance policy was void as result of insured's misrepresentation and issue of its liability for insured's claim for damages because jury's verdict on insurance company's misrepresentation claim obviated need for trial on damages claim); *Huss v. Am. Family Mut. Ins. Co.*, No. 13cv330 WJ/RHS, 2014 WL 12465421, at *1 (D.N.M. Jan. 10, 2014) ("Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims."); *Martin v. Bell Helicopter Co.*, 85 F.R.D 654, 658 (D. Colo. 1980) ("One purpose behind Rule 42(b) is the deferral of costly and potentially unnecessary discovery and trial preparation on other phases of the case pending resolution of preliminary dispositive issues.").

As a final consideration, Plaintiff argues that bifurcation will prevent the "irreparable prejudice" that would result from the presentation in a single trial of evidence pertaining to the respective claims. (Doc. 36 at 7). The Court is confident that a reasonable jury, presented with clear instructions, could ably comprehend the distinctions between the respective claims and the evidence relevant thereto. Nevertheless, in light of the clearly separable nature of the declaratory

judgment action (which will require limited evidence on the discrete issue of the validity of the rescission) and Mr. Saul's bad faith counterclaims (which would be rendered moot by a judgment in favor of Plaintiff on its declaratory judgment action), the prospect of jury confusion—however slight, combined with the prospect of conserving judicial resources by first trying the potentially dispositive declaratory judgment action, supports bifurcation. *See Engen v. Colorado Mills Mall Ltd. P'ship*, No. 09-CV-01281-REB-KLM, 2010 WL 2232422, at *1 (D. Colo. May 28, 2010) (concluding that bifurcation was proper where it would avoid "unnecessarily complicat[ing] and potentially confus[ing]" jurors by asking them to consider related, but "clearly separable" issues, especially considering that one of the claims could be rendered moot by the jury's verdict on the other). Mr. Sauls' broad-based and undeveloped objections to the contrary are not persuasive.

**CONCLUSION**

For the reasons stated herein, the Court concludes that bifurcating the proceedings and staying proceedings as to, Mr. Saul's bad-faith counterclaims is appropriate pursuant to Rule 42(b) of the Federal Rules of Civil Procedure.

**IT IS THEREFORE ORDERED THAT:**

(1) Plaintiff's *Motion to Bifurcate and Stay Discovery Regarding Extra-Contractual Claims*, filed August 25, 2017, (Doc. 36)., is GRANTED;

(2) The initial trial in this case shall be limited to the issues presented in Plaintiff's *Complaint for Declaratory Relief* (Doc. 1)..

———————————————
UNITED STATES DISTRICT JUDGE